IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **FIRETHORNE COUNTRY CLUB, LLC** | ) 10-30695 |
| | ) |
| Debtor. | ) |

## EMERGENCY MOTION OF THE DEBTOR FOR AUTHORITY TO USE CASH COLLATERAL, PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE

Firethorne Country Club, LLC, the above-captioned debtor and debtor-in-possession herein (the "Debtor"), by this emergency motion (the "Motion"), respectfully requests the entry of an interim order authorizing the use of cash collateral and providing adequate protection for the use thereof, pursuant to sections 105, 361, and 363 under Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtor respectfully represents and states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The statutory predicates for relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

{00223269.DOC V. T089.015286;}

## BACKGROUND

2. On March 15, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues in possession of its properties and the management of its business as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner or have been appointed in this chapter 11 case.

3. The Debtor owns and operates a country club located in Union County, which consists of, among other things, a world class golf course, and a state-of-the-art swimming, tennis, fitness and dining complex.

4. On or about December 16, 2004, the Debtor executed a Promissory Note (the "Note"), Loan Agreement (the "Loan Agreement"), and Security Agreement (the "Security Agreement") evidencing indebtedness for money actually loaned, not to exceed $8,000,000, and granting security for said indebtedness against property of the Debtor in favor of Textron Financial Corporation ("Textron"). Pursuant to the terms of the Security Agreement, the Debtor granted Textron a security interest in substantially all property of the Debtor, including real property; fixtures; and personal property, both tangible and intangible. In connection therewith, the Debtor executed various agreements and devices to secure the loan to the Debtor created by the Loan Agreement (these documents, collectively, along with the Note, Loan Agreement and Security Agreement may be referred to herein as the "Loan Documents").

5. Due to the emergency nature of this filing, counsel for the Debtor has not yet had a full opportunity to review all Loan Documents. At this point, the Debtor relies upon its understanding that the Note is secured by a properly perfected lien on substantially all assets of the Debtor. The Debtor-in-Possession reserves the right to

{00223269.DOC V. T089.015286;}

challenge the perfection of any liens at a later date following more appropriate notice, as well as the right of any as-yet-unformed Creditors' Committee to do so. For purposes of this Motion, the Debtor will presume that the Note and Loan Agreement constitute a valid debt owed by the Debtor and that substantially all of its property is subject to a valid, first-priority and properly perfected security interest securing that debt.

6. By the terms of the Loan Documents, the Debtor's obligation to repay Textron matured on December 31, 2009.

## RELIEF REQUESTED

7. Pursuant to this Motion, the Debtor seeks authority to use of cash collateral, on an interim basis, to operate in the ordinary course of business. The Debtor proposes to use the cash collateral in accordance with a formal budget (the "Budget"), prepared by the Debtor, a preliminary draft of which is attached hereto as exhibit A, and which assumes the accrual of ordinary course business and bankruptcy related expenses necessary to fund the Debtor's operations going forward. Because the amount of certain expenses or the timing of all expenses cannot be predicted exactly, the Debtor proposes that it be in compliance with the Budget so long as the Debtor does not exceed the Budget by more than 10% per line item (on a cumulative basis).

8. The Debtor requests a preliminary hearing on an emergency basis to approve this interim request pursuant to Bankruptcy Rule 4001(b)(2) and that a final hearing be set at least 14 days after the filing of this motion.

## BASIS FOR RELIEF REQUESTED

9. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court

{00223269.DOC V. T089.015286;}

approval. See 11 U.S.C. § 363(c)(2). After notice and a hearing, the Court may approve a debtor's use of cash collateral without the necessity of obtaining the secured creditor's consent, but "to the extent necessary to avoid immediate an irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b).

10. In order for a court to authorize the use of cash collateral over a secured party's objection, the secured party's interest in the cash collateral must be adequately protected. In the context of a cash collateral motion, the purpose of adequate protection is to protect the secured lender from a diminution in the value of its collateral during the period in which it is prevented from foreclosing upon such collateral by the automatic stay. In re Delta Resources, Inc., 54 F.3d 722, 728-30 (11th Cir. 1995), cert. denied, 516 U.S. 980 (1995).

11. Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining). In re May, 169 B.R. 462 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral).

12. The Lender has adequate protection against the diminution of the value of the pre-petition Collateral. Preliminarily, the use of cash collateral in the ordinary course of business, in and of itself, provides adequate protection in that it preserves the going concern value of the Debtor's business and, as a result, the value of the pre-petition

Collateral. The Debtor also asserts that the value of the collateral, notwithstanding the cash collateral the Debtor seeks access to through this motion, is well in excess of the indebtedness to Textron and there is a sufficient equity cushion based on the value of the real property, the fixtures and improvements thereon, and the tangible personal property of the Debtor. Nevertheless, to further protect against diminution in the value of the pre-petition Collateral, the Debtor proposes to provide the Lender with replacement liens in post-petition assets to the same extent and priority as existed pre-petition, for all cash collateral actually expended for the duration of the interim cash collateral Order.

13. Due to the emergency nature of the relief requested, the Debtor is not yet prepared to provide evidence as to Textron's equity cushion, but reserves the right to do so at a subsequent hearing on the use of cash collateral and to seek a determination that Textron is adequately protected on that basis alone. In the interim, the Debtor's cash flow and other financial analysis shows that Textron's collateral position will be adequately maintained during the Debtor's use of cash collateral, especially during the short term period covered by the interim order herein requested. Thus, the Debtor respectfully submits that its use of cash collateral is proper pursuant to section 363(c)(2) of the Bankruptcy Code.

14. Absent the interim relief requested, the Debtor will suffer immediate and irreparable harm. In the absence of a court order authorizing the use of cash collateral, the Debtor will be unable to meet its operating expenses and will be forced to cease operations immediately, rather than reorganizing the debt and business structures in order to maximize value for the Debtor's estate and creditors. Many of the Debtor's vendors operate on a cash basis; regular employee payroll is due on Friday, March 19, (this item

{00223269.DOC V. T089.015286;}

is the subject of a separate pending motion to approve immediate payment of certain pre-petition wages); and other expenses require payment on a rolling basis throughout the month in order to ensure continued smooth operation of the Debtor. The Debtor's primary source of revenue is from the dues paid and charges incurred by its members. Those members' continued satisfaction with the Debtor is crucial to retain viability as a going concern. Without immediate access to cash, the Debtor's inability to pay certain items would lead to a quick collapse of the business operations.

15. The Debtor's ability to fashion an effective plan to satisfy secured, priority, and other claims would be irreparably impaired and the value of the pre-petition Collateral, especially receivables and inventory, will suffer a dramatic decline if the Debtor is not permitted to use cash collateral. Moreover, if the Debtor is not permitted to use cash collateral, the value of the Debtor's assets and the Collateral will deteriorate exponentially.

16. Accordingly, the Debtor requests that this Court grant it interim authority to use cash collateral in accordance with the terms of a final Budget until a further hearing on the Motion can be scheduled pursuant to Bankruptcy Rule 4001. Without such authorization, the Debtor's efforts to reorganize and maximize creditor recoveries will be brought to a halt and the intent and purpose of chapter 11 will be frustrated.

## NOTICE

Notice of this Motion has been given to (a) the Bankruptcy Administrator for the Western District of North Carolina, (b) the Debtor's twenty (20) largest unsecured creditors, and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtor respectfully requests that the court grant the relief requested herein and such further and other relief as is just and proper.

Dated: Charlotte, North Carolina
       March 15, 2010

                                      HAMILTON MOON STEPHENS STEELE
                                      & MARTIN, PLLC

                                      */s/ Travis W. Moon*
                                      Travis W. Moon (Bar No. 3067)
                                      201 South College Street
                                      Charlotte Plaza, Suite 2020
                                      Charlotte, North Carolina 28244-2020
                                      Telephone: (704) 344-1117
                                      Facsimile: (704) 344-1483

                                      *Counsel for the Debtor*

{00223269.DOC V. T089.015286;}

# Exhibit A

(to the Emergency Motion of the Debtor for Authority to Use Cash Collateral,
Pursuant to Sections 361 and 363 of the Bankruptcy Code)

{00223269.DOC V. T089.015286;}

**Firethorne Country Club**
**Cash Collateral Budget**
**March 2010 - June 2010**

| | Budget 2010 MAR | Budget 2010 APR | Budget 2010 MAY | Budget 2010 JUN | Budget MAR-JUN 2010 Totals |
|---|---|---|---|---|---|
| **Revenue:** | | | | | |
| Green Fees | 14,150 | 16,950 | 16,650 | 14,150 | 61,900 |
| Golf Carts | 26,012 | 31,146 | 30,614 | 25,927 | 113,699 |
| Driving Range | 59,200 | 0 | 0 | 0 | 59,200 |
| Dues Income Golf | 64,860 | 64,400 | 63,940 | 63,940 | 257,140 |
| Dues Income Non-Refundable Golf | 57,500 | 58,420 | 60,490 | 61,870 | 238,280 |
| Dues Income Junior Golf | 3,250 | 3,500 | 3,500 | 3,500 | 13,750 |
| Dues Income Community | 24,480 | 24,480 | 24,480 | 24,720 | 98,160 |
| Dues Income Swim & Tennis | 12,740 | 13,230 | 13,230 | 13,230 | 52,430 |
| Dues income Corporate | 7,820 | 8,280 | 8,280 | 8,280 | 32,660 |
| Dues Income Dining | 360 | 360 | 360 | 360 | 1,440 |
| Pro Shop Income | 12,517 | 39,240 | 44,550 | 38,865 | 135,172 |
| F & B Dining Room | 71,782 | 74,017 | 74,580 | 73,396 | 293,775 |
| F & B Banquet | 21,880 | 59,000 | 61,640 | 63,480 | 206,000 |
| Non-refund. Deposits S&T | 6,000 | 12,000 | 6,000 | 0 | 24,000 |
| Non-refund. Deposits Corporate | 0 | 30,000 | 0 | 0 | 30,000 |
| Non-refund. Deposits Dining | 0 | 0 | 0 | 0 | 0 |
| Non-refund. Deposits Golf | 35,000 | 35,000 | 52,500 | 52,500 | 175,000 |
| Non-refund. Deposits Jr Golf | 0 | 6,000 | 0 | 0 | 6,000 |
| Pool Income | 0 | 3,000 | 4,100 | 7,712 | 14,812 |
| Swim & Tennis | 10,450 | 8,820 | 12,250 | 11,250 | 42,770 |
| Locker Rental | 0 | 0 | 0 | 0 | 0 |
| Misc. | 35,700 | 20,700 | 8,450 | 8,450 | 73,300 |
| **Total Revenue** | $ 463,701 | $ 508,543 | $ 485,614 | $ 471,630 | $ 1,929,488 |
| | | | | | |
| **Expenses:** | | | | | |
| Membership Department | 4,640 | 5,684 | 4,394 | 3,924 | 18,642 |
| F & B Dining Room/BQT | 97,717 | 141,206 | 123,599 | 120,037 | 482,559 |
| Golf Shop | 28,060 | 40,961 | 36,467 | 34,850 | 140,338 |
| Course Maintenance | 56,635 | 75,536 | 74,672 | 65,060 | 271,903 |
| Horticulture | 0 | 0 | 0 | 0 | 0 |
| Tennis Operations | 16,812 | 22,249 | 19,497 | 21,052 | 79,610 |
| Swim Facility | 1,310 | 2,767 | 17,417 | 25,616 | 47,110 |
| G & A | 103,849 | 112,922 | 98,772 | 104,983 | 420,526 |
| Professional Services | 40,000 | 20,000 | 15,000 | 10,000 | 85,000 |
| Court Fees | 4,875 | | | 6,500 | 11,375 |
| **Total Expenses** | $309,023 | $401,325 | $374,818 | $375,522 | $1,557,063 |
| | | | | | |
| **Operating Income** | $154,678 | $107,218 | $110,796 | $96,108 | $372,426 |